UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRADEXIM INTERNATIONAL CO. CALIFORNIA, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| GAVRILOVIC HOLDING PETRINJA, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 20-3596 (RBW)

**MEMORANDUM OPINION**

The plaintiff, Tradexim International Co. California, brought this civil action against Gavrilovic Holding Petrinja, alleging fraud and seeking monetary damages. See Complaint ("Compl.") ¶ 27, ECF No. 1. Pending before the Court are the plaintiff's (1) motion for a default judgment, see Plaintiff's Motion and Memorandum in Support of Default Judgment ("Pl.'s Mot.") at 1, ECF No. 9; (2) motion to treat the motion for a default judgment as conceded, see Plaintiff's Motion and Memorandum to Treat Motion for Default Judgment as Conceded at 1, ECF No. 12; and (3) motion to schedule a hearing, see Plaintiff's Motion to Set Hearing at 1, ECF No. 14. After carefully considering all of the relevant evidence submitted by the plaintiff,[1] the Court concludes for the following reasons that it must grant the portion of the plaintiff's

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Compl., Exhibit ("Ex.") 1 (Affidavit ("Malic Aff.")), ECF No. 1-1; (2) Compl., Ex. 2 (Affidavit ("Trkulja Aff.")), ECF No. 1-2; (3) Compl., Ex. 3 (Protocol ("Protocol Agreement")), ECF No. 1-3; (4) Pl.'s Mot., Ex. B (Affidavit of David L. Earnest in Support of Motion for Default Judgment ("Earnest Aff.")), ECF No. 9-2; and (5) Pl.'s Mot, Ex. C (Affidavit of Nikola Horvat in Support of Plantif[f]'s Motion for Judgment ("Horvat Aff.")), ECF No. 9-3.

motion requesting a default judgment as to liability.[2]  The Court will issue a separate Order at a later date addressing the damages to which the plaintiff is entitled.[3]

## I.    BACKGROUND

The plaintiff brought this civil action against the defendant, alleging fraud and seeking monetary damages arising out of a 1990 agreement between the parties, under which the defendant "agreed to supply containers of canned ham to [the plaintiff] in exchange for [ ] $1,006,000, paid in advance."  See Compl. ¶ 7.  However, "[t]he canned ham [the defendant] delivered to [the plaintiff] was defective because it was found to contain deadly bacteria[,]" and, later that year, the parties "executed an agreement providing that [the defendant] would make a $450,205.54 payment to [the plaintiff] [ ] as a result of the rejection of the canned ham (the 'Protocol Agreement')."  Id. ¶ 8–9; see id., Exhibit ("Ex.") 3 (Protocol ("Protocol Agreement")) at 2, ECF No. 1-3.  The defendant never made the payment, "ceased operations [in 2002,] and entered into [ ] bankruptcy proceedings in the Republic of Croatia[,]" proceedings that were subsequently "found . . . to be illegally performed" by an international arbitral tribunal.  Id. ¶¶ 10–11.

On December 10, 2020, the plaintiff filed its Complaint in this case.  See id. ¶ 1.  On January 14, 2021, the plaintiff successfully served the defendant with a copy of the Complaint and a summons in accordance with the Federal Rules of Civil Procedure and The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

---

[2] Because the Court will address the merits of the plaintiff's motion for a default judgment, the Court will deny the plaintiff's motion to treat the motion for a default judgment as conceded as moot.

[3] The Court requires additional information to appropriately address the damages to which the plaintiff is entitled, as well as the prejudgment interest to be awarded.  Thus, as indicated below, the Court will order the plaintiff to file supplemental briefing on these matters before the Court issues a separate Order regarding the plaintiff's request for damages and prejudgment interest.  However, the Court believes a hearing is unnecessary at this time and will therefore deny without prejudice the plaintiff's motion for a hearing.

Commercial Matters (the "Hague Convention"), see Return of Service, at 1, ECF No. 4, to which Croatia is a signatory, see Pl.'s Mot., Ex. B (Affidavit of David L. Earnest in Support of Motion for Default Judgment ("Earnest Aff.")) ¶ 5, ECF No. 9-2.  After the defendant failed to appear or otherwise respond to the Complaint, the plaintiff filed a motion for entry of default on March 15, 2021, see Affidavit in Support of Default at 1, ECF No. 5, and the Clerk of the Court entered a default on March 17, 2021, see Default at 1, ECF No. 6.  The plaintiff then filed a motion for a default judgment on October 20, 2022.  See Pl.'s Mot. at 1.

The plaintiff requests that the Court award it "damages in the total amount of $2,227,994.71[.]"  Id. at 5.[4]  The $2,227,994.71 judgment requested is based on an award of the principal amount of $450,205.54, and prejudgment interest of $1,777,789.17.  Id.  Accompanying its October 2022 motion for a default judgment, the plaintiff submitted an additional affidavit from Nikola Horvat, a Croatian attorney, stating that "[i]nterest payments were calculated per [y]ear to the [p]rincipal amount of $450,205.54 according to the statutory rate determined by the Statute of the Croatian Government on Default Interest Rates applicable in the relevant time period . . . ."  Pl.'s Mot, Ex. C (Affidavit of Nikola Horvat in Support of Plantif[f]'s Motion for Judgment ("Horvat Aff.")) at 2–3, ECF No. 9-3 (concluding that "the interest to the [p]rincipal amount[] [was] $ 1,777[,]789[.]17" as of September 11, 2022).

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

---

[4] The plaintiff requested in its Complaint that it be awarded "exemplary and punitive damages in the amount of at least $3,000,000[,]" Compl. at 6, but the plaintiff has since rescinded this request, Pl.'s Mot. at 22 ("Despite the claims for relief in the Complaint, [the p]laintiff seeks judgment only for the principal amount of $450,205.54, and pre-judgment interest of $1,777,789.17, which in total constitutes a sum certain of $2,227,994.71.").

defend" against an action.  Fed. R. Civ. P. 55(a); see also Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980) ("The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970))). Rule 55 sets forth a two-step process for a party seeking a default judgment: first, entry of a default, followed by entry of a default judgment.  Fed. R. Civ. P. 55; see also 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (4th ed. 2022) (stating that "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").  When a defendant has failed to plead or otherwise defend against an action, the plaintiff may request that the clerk of the court enter a default against that defendant.  See Fed. R. Civ. P. 55(a).  Once the clerk enters the default pursuant to Rule 55(a), Rule 55(b) authorizes either the clerk or the Court to enter a default judgment against the defendant.  See Fed. R. Civ. P. 55(b).

### III.   FINDINGS OF FACT

In support of its motion for a default judgment, the plaintiff has submitted evidence, including records and affidavits.  Having considered the record in this case, the Court has determined that the plaintiff's briefing is sufficiently detailed and, thus, an evidentiary hearing is unnecessary.  Accordingly, based on the existing record, the Court makes the following findings of fact, which are largely derived from the uncontested factual allegations in the plaintiff's Complaint, the Protocol Agreement, and the attached affidavits from two of the defendant's former employees.

The plaintiff, Tradexim International Co. California, is a District of Columbia corporation "with its principal place of business in California[.]" Compl. ¶ 1; see Pl.'s Mot. ¶ 10.[5] The defendant, Gavrilovic Holding Petrinja, "was a [s]tate-owned holding company that owned a food processor and butcher . . . ." Compl. ¶ 2. "In December 1990, [the defendant] and [the plaintiff] entered into an agreement pursuant to which [the defendant] agreed to supply containers of canned ham to [the plaintiff] in exchange for [ ] $1,006,000, paid in advance." Id. ¶ 7; see also id., Ex. 1 (Malic Aff.) at 1; id., Ex. 2 (Trkulja Aff.) at 1. However, "[t]he canned ham was rejected by the United States Department of Agriculture Food Safety and Inspection Service ("USDA-FSIS") as being unfit for human consumption and returned back to be destroyed with the supervision of authorities in Croatia." Id. ¶ 8; see also id., Ex. 1 (Malic Aff.) at 1; id., Ex. 2 (Trkulja Aff.) at 1. Consequently, the parties subsequently executed the Protocol Agreement, under which the defendant agreed to pay the plaintiff $450,205.54 as a result of the rejected canned ham. See id. ¶ 9; see also id., Ex. 1 (Malic Aff.) at 1 (stating that "it was agreed that [the defendant] will refund the advance payment by taking back all returned goods that did not correspond to the quality of the U[.]S[.] market, for which sole responsibility is on [the defendant] company"); id., Ex. 2 (Trkulja Aff.) at 1 (same). See generally id., Ex. 3 (Protocol Agreement).

However, the defendant never made this payment to the plaintiff, id. ¶ 10, and "[i]n 2002, [the defendant] ceased operations and entered into [ ] bankruptcy proceedings in the Republic of Croatia[,]" id. ¶ 11, in which "[c]reditors of [the defendant], including [the plaintiff] were never afforded an opportunity to be heard or allowed to collect on any debts[,]" id. ¶ 12. The

---

[5] See also Section IV.A (discussing the plaintiff's status as a District of Columbia corporation).

"Commercial Court of Zagreb opened and closed the bankruptcy proceeding of [the defendant] on the same day." Id.

Subsequently, as part of an arbitration proceeding conducted by the International Centre for Settlement of Investment Disputes (ICSID), id. ¶ 14, an arbitral tribunal "noted [ ] 'serious irregularities in the conduct of the bankruptcy proceeding,'" id. ¶ 17, including "that funds that were part of [the defendant's] bankruptcy estate were improper[ly] transferred to a 'secret Swiss bank account' owned by a Panamanian entity[,]" id. ¶ 16. During these arbitration proceedings, the Republic of Croatia "admitted . . . that there was a 'fraudulent scheme in favo[]r of a bankruptcy sale.'" Id. ¶ 17. The arbitral tribunal ultimately concluded that the Croatia bankruptcy proceedings had been "illegally performed[.]" Id. ¶ 11. It was only after the tribunal issued its final award decision on July 26, 2018, that the plaintiff became aware of the irregularities in the defendant's prior bankruptcy proceedings. Id. ¶ 15; Pl.'s Mot., Ex. B (Earnest Aff.) ¶ 9 ("Since entry of the default judgment against [the d]efendant, [the p]laintiff has sought to participate in any re-opened bankruptcy proceedings in Croatia. Thus far, [the p]laintiff has been unsuccessful.").

## IV.   CONCLUSIONS OF LAW

The plaintiff "requests that the Court enter an Order for [a] default judgment in favor of [the p]laintiff and against [the d]efendant" arising out of the defendant's alleged fraud. Pl.'s Mot. at 5. However, before entering a default judgment, the Court must comply with its "affirmative obligation to determine whether it has subject-matter jurisdiction over the action[,]" Friends Christian High Sch. v. Geneva Fin. Consultants, 321 F.R.D. 20, 22 (D.D.C. 2017) (internal quotation marks omitted), as well as personal jurisdiction over the defendant, see Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005). Once the Court is satisfied that it has

6

jurisdiction over the action, the Court must determine whether the plaintiff has sufficiently alleged facts establishing the defendant's liability.  See Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (noting that entry of a default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint") (emphasis added).  The Court's Conclusions of Law will therefore proceed in several parts.  First, the Court will address whether it has subject-matter jurisdiction over the plaintiff's claim.  Next, the Court will address whether it may validly exercise personal jurisdiction over the defendant.  Finally, the Court will assess whether the plaintiff has stated a cognizable claim for relief.

**A.      Subject-Matter Jurisdiction**

In determining whether a default judgment may be entered, the Court must first consider whether it has subject-matter jurisdiction over the plaintiff's claim.  28 U.S.C. § 1332 establishes original jurisdiction for federal district courts in cases based on diversity of citizenship where the matter in controversy "exceeds the sum or value of $75,000" and is between "citizens of a [s]tate and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).  Further, "a corporation shall be deemed to be a citizen of every [s]tate . . . by which it has been incorporated[.]"  Id. § 1332(c)(1).

Here, the plaintiff "is a District of Columbia corporation with its principal place of business [in California,]" Pl.'s Mot. ¶ 10, and the defendant is "a Croatian [s]tate-owned holding company . . . with its legal representative located [in] Croatia[,]" id.  Therefore, the plaintiff is a citizen of the District of Columbia and the defendant is a citizen of Croatia.  The plaintiff is requesting $2,227,994.71 in damages and $2,181.85 in costs—the claim therefore exceeds the

statutory requirement of $75,000.  See Pl.'s Mot. at 5–6.  Accordingly, the Court concludes that it has subject-matter jurisdiction over the parties, pursuant to 28 U.S.C. § 1332.[6]

**B.      Personal Jurisdiction**

The Court next considers whether it may properly exercise personal jurisdiction over the defendant in this case.  "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." Candido v. District of Columbia, 242 F.R.D. 151, 160 (D.D.C. 2007).  "Accordingly, '[f]ailure [to effect proper] service is a jurisdictional defect which is fatal[,]' and is grounds for dismissal." HRF Trade Inc. v. Akimat of Atyrau, No. 17-1019 (RBW), 2024 WL 3534654, at *3 (D.D.C. July 25, 2024) (Walton, J.) (quoting Tom Swayer Prods., Inc. v. Progressive Partners Achieving Sols., Inc., 550 F. Supp. 2d 23, 26 (D.D.C. 2008)).  "The plaintiff bears the burden of proving that [it] has effected proper service[,]" Jouanny v. Embassy of Fr. in the U.S., 220 F. Supp. 3d 34, 37 (D.D.C. 2016), by "demonstrat[ing] that the procedure employed satisfied the requirements of the relevant portions of Rule 4[,]" Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation marks omitted).

Relevant here, under Federal Rule of Civil Procedure 4(h)(2), a foreign corporation "that is subject to suit under a common name[] must be served[]" "at a place [that is] not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual," Fed. R. Civ. P. 4(h)(2), including "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on

---

[6] The plaintiff originally alleged in its Complaint that the Court had jurisdiction pursuant to both 28 U.S.C. § 1332 and 28 U.S.C. § 1330(a) because "[the defendant] can be considered an alter ego of the Republic of Croatia as the Republic of Croatia assumed the assets and liabilities of [the defendant]," see Compl. ¶¶ 3–4, but the plaintiff has since rescinded the 28 U.S.C. § 1330(a) argument in its motion for a default judgment, see Pl.'s Mot. at 3 n.1 ("[The p]laintiff withdraws and does not rely on the assertion in its Complaint that this Court has jurisdiction pursuant to 28 U.S.C. [§] 1330(a).").

the Service Abroad of Judicial and Extrajudicial Documents[,]" Fed. R. Civ. P. 4(f)(1). "The Hague Convention is an international agreement among the signatory sovereign states on service of judicial documents[,]" Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez., 23 F.4th 1036, 1038 (D.C. Cir. 2022), cert. denied, 143 S. Ct. 113 (2022), that permits parties to effectuate process on their counterparts in another signatory state through its designated "Central Authority [that] receives [ ] request[s] for service . . . [and] serve[s] the documents" upon the opposing party, id. at 1039; see Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361.

    Here, the defendant is a foreign corporation. As indicated previously, the plaintiff served the defendant with a summons and copy of the Complaint on January 14, 2021, see Return of Service at 1, pursuant to the Hague Convention, to which Croatia is a signatory, Pl.'s Mot., Ex. B (Earnest Aff.) ¶ 5. As evidence, the plaintiff has included a certificate of successful service from the Republic of Croatia's Ministry of Justice and Administration. See Return of Service at 1, Ex. A (Certificate of Successful Service Under Hague Convention on Service) at 1, ECF No. 4-1. Therefore, the Court concludes that the plaintiff properly effected service of process on the defendant pursuant to Rules 4(h)(2) and 4(f)(1). Accordingly, because the Court has valid subject-matter jurisdiction over the action, see supra Section IV.A., and the plaintiff properly served the defendant pursuant to Rules 4(h)(2) and 4(f)(1), the Court concludes that it has personal jurisdiction over the defendant.

C. **Liability**

Having concluded that the Court has subject-matter jurisdiction over the plaintiff's claim and personal jurisdiction over the defendant, the Court will now address whether the plaintiff has sufficiently alleged its claim of fraud to warrant a default judgment as to the defendant's liability.

To reiterate, the Federal Rules of Civil Procedure authorizes the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). As noted earlier, Rule 55 provides for a two-step process for a party seeking a default judgment against a party that has failed to plead or otherwise defend against an action. First, entry of a default against the defendant by the Clerk of the Court. See Fed. R. Civ. P. 55(a). Entry of a default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland, 763 F. Supp. 2d at 67. Second, either the Clerk of the Court or the Court may enter a default judgment against the defendant. See Fed. R. Civ. P. 55(b).

"For [a] default judgment [to be entered], [the] defendant must be considered a 'totally unresponsive' party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (quoting Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). Further, [t]he determination of whether default judgment is appropriate is committed to the discretion of the trial court." Id. (citing Beech, 636 F. 2d at 836).

Here, the plaintiff has brought one claim against the defendant for fraud. See Compl. ¶¶ 21–28. "The essential elements of common law fraud are: (1) a false representation (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to

10

deceive, and (5) action is taken in reliance upon the representation." Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1074 n.22 (D.C. 2008) (quoting Bennett v. Kiggins, 377 A.2d 57, 59–60 (D.C. 1977)).  Specifically, as the Court already found, see supra Part III, the defendant agreed to pay the plaintiff under the Protocol Agreement but never did so, see Compl. ¶¶ 9–10.  Then, the defendant pursued bankruptcy proceedings, which were subsequently found to be illegal by an international arbitral tribunal, see id. ¶¶ 10–11, after the Republic of Croatia admitted "that there was a 'fraudulent scheme in favo[]r of a bankruptcy sale[,]'" id. ¶ 17.  The arbitral tribunal identified several "serious irregularities in the conduct of the bankruptcy proceeding," id., including the defendant's improper transfer of funds to a "secret Swiss bank account . . . [,]" id. ¶ 16, and the Court finds it reasonable to infer that these actions were meant to shield these funds from any creditors, including the plaintiff.  And, because the Clerk of the Court entered a default against the defendant on March 17, 2021, see Default at 1, the plaintiff's uncontroverted allegations regarding the defendant's bankruptcy proceedings and improper transfer of funds to the Swiss account are taken as true, see Ngena Found. v. F&R Crous Found., No. 20-793 (CKK), 2021 WL 1546457, at *2 (D.D.C. Apr. 20, 2021) (noting the same).  Based on these uncontroverted allegations, the Court concludes that the plaintiff has sufficiently alleged facts that the defendant "engaged in fraud with regards to [its] bankruptcy proceedings[,]" Compl. ¶ 19, and "as a direct and proximate result of [the] fraud, [the p]laintiff has suffered damages in the amount of at least $450,205.54[,]" plus interest, as the defendant never delivered the payment promised pursuant to the Protocol Agreement, id. ¶ 27.  Therefore, the Court concludes that the plaintiff has established that it is entitled to a default judgment on the issue of the defendant's liability.

D.     **Damages and Prejudgment Interest**

Although, as indicated above, see supra note 3, the Court will not address the award of damages and prejudgment interest in this Memorandum Opinion and Order, the Court notes several points for clarification to guide supplemental briefing on these matters.

In its motion, the plaintiff requests that the Court award prejudgment interest in the amount of $1,777,789.17. See Pl.'s Mot. at 5. In support of this request, the plaintiff submitted an affidavit from Nikola Horvat, a Croatian attorney, stating that "[i]nterest payments were calculated per [y]ear to the [p]rincipal amount of $450,205.54 according to the statutory rate determined by the Statute of the Croatian Government on Default Interest Rates applicable in the relevant time period . . . ." Pl.'s Mot, Ex. C (Horvat Aff.) at 2. Based on these calculations, the affidavit further concludes that "the interest to the [p]rincipal amount[] is $ 1,777[,]789[.]17" as of September 11, 2022. Id. at 2–3.

Upon consideration of the plaintiff's submissions, the Court concludes it requires additional information before resolving the damages component of the plaintiff's motion. First, the plaintiff requests the award of prejudgment interest according to statutory rates determined by the Croatian government. See Pl.'s Mot., Ex. C (Horvat Aff.), at 2. However, the Protocol Agreement does not appear to address the question of the plaintiff's legal entitlement to prejudgment interest, and the plaintiff has provided no legal basis as to why the Croatian statutory rates govern the award of such interest, rather than another rate, such as a rate applicable in the forum that adjudicated the matter, i.e., the District of Columbia. Second, assuming arguendo that the Court must apply the Croatian statutory rates, the Horvat Affidavit refers to the following several different time periods and governing statutes:

> Interest payments were calculated per [y]ear to the [p]rincipal amount of $450,205.54 according to the statutory rate determined by the Statute of the

12

Croatian Government on Default Interest Rates applicable in the relevant time period (up until [ ] December [31,] 2007) and according to the official default interest rates determined as defined in Article 29 of the Obligations Act . . . and in the Act on Financial Operating and the Preliminary Bankruptcy Settlements . . . for the time period from [August 7, 1995] up until [September 30, 2022].

Id. The overlapping dates that correspond to different applicable interest rates render it unclear to the Court as to which rates apply, and to which time periods. Third, the Horvat declaration's references to different time periods—one beginning in May 1994 and another beginning in August 1995—also renders unclear the precise time when the interest began to accrue. Compare id. (noting that the interest rates were calculated pursuant to the official default interest rates "for the time period from [August 7, 1995,] up until [September 30, 2022]") with id. (noting that another statutory rate covered "the time period from [ ] May [30, 1994,] up until [ ] December [31,] 2007"). Finally, because the plaintiff's motion was originally filed in 2022, the Court will provide the plaintiff the opportunity to provide supplemental briefing addressing the plaintiff's requested award of prejudgment interest under the governing rate for the period between October 1, 2022, and the date a default judgment was entered against the defendant as to liability, i.e., December 3, 2024. In light of these issues, the Court will order the plaintiff to file supplemental briefing.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's motion for a default judgment as to liability and enter default judgment against the defendant.

**SO ORDERED** this 3rd day of December, 2024.[7]

REGGIE B. WALTON<br>
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.